IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

THOMAS S. PAYNE,

     Plaintiff,

v.                                CASE NO. 5:13-cv-91-MW-GRJ

FRANK McKEITHEN and
RONALD LIPPMANN,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this case by filing a *pro se*, *in forma pauperis*, prisoner civil rights complaint under 42 U.S.C. § 1983.  Doc. 1.  Plaintiff alleges that while he was a pretrial detainee at the Bay County Jail, Defendants Sheriff Frank McKeithen and Dr. Ronald Lippmann were negligent and deliberately indifferent to his serious medical needs in violation of his constitutional rights.  Specifically, Plaintiff alleges that during his confinement at Bay County Jail he developed a severe lack of circulation and infection in both of his legs.  He contends that the Defendants failed to timely treat his condition, and that when he was transferred to a hospital for treatment the condition in his left leg could not be reversed and the leg was amputated.  *Id*.

Now pending before the Court are the Defendants' separate motions for summary judgment, Docs. 34 and 36.   Plaintiff has filed responses in opposition to the motions, Docs. 41 and 45.  Plaintiff has also filed a motion requesting to reopen discovery in this case, which expired on July 14, 2014.  Doc. 49.  Plaintiff alleges that he needs additional time to conduct limited discovery that will support his claims, and that his discovery efforts were impeded due to his medical conditions and incarceration.

Plaintiff argues that following such discovery he should be granted leave to file an amended complaint to name other individuals that were recently disclosed to Plaintiff.

For the reasons discussed below, the undersigned recommends that Sheriff McKeithen's motion for summary judgment be granted, that Dr. Lippman's motion for summary judgment be granted in part and denied in part, and that Plaintiff be afforded an additional period of time to engage in limited discovery.

## Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth,* 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250

(1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

## **Eighth Amendment Claims**

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment.   Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause, rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause.  *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 n. 3 (11th Cir.2007).  However, pretrial detainees are afforded the same protection as prisoners, and cases analyzing deliberate indifference claims of pretrial detainees and prisoners can be used interchangeably. *Id.*

"To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). To establish the second element, deliberate indifference to the serious medical need, the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that the plaintiff must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference").

"Delay in access to medical attention can violate the Eighth Amendment ... when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994) (citation and internal quotation marks omitted), abrogated on other grounds by *Hope v. Pelzer*, 536 U.S. 730 (2002). Deliberate indifference in the form of an unreasonable delay is cognizable when prison officials delay treatment for life-threatening emergencies, but also in "situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id.* Ultimately, however, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.*

## Discussion

Both Defendants contend, *inter alia*, that summary judgment should be granted with respect to Plaintiff's negligence claims because Plaintiff has failed to comply with Florida law governing pre-suit notice and other requirements in medical malpractice cases. Docs. 34, 36. In response to both motions, Plaintiff clarifies that he does not seek to assert any state-law tort claims in this case and is proceeding only pursuant to the alleged violation of his constitutional rights. Docs. 41, 45. Based on Plaintiff's clarification, the Defendants are entitled to summary judgment to the extent that the complaint asserts state-law negligence claims.

Sheriff McKeithen's motion asserts that he is entitled to summary judgment because Plaintiff has made no allegations suggesting that he personally participated in a violation of Plaintiff's rights. Doc. 34. In his response in opposition to the motion,

Plaintiff states that the Sheriff establishes and enforces policies pertaining to inmate medical care and is responsible for hiring medical staff.  Doc. 41.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. In order to be liable, the claimant must show that the official "personally participate[d]" in the act or there was "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  In order to hold a state actor liable in an official capacity, the plaintiff must show that the deprivation of a constitutional right resulted from an express policy; a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or the decision of a person with "final policymaking authority." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970)); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658 )(1978).

Plaintiff has made no showing that Sheriff McKeithen's individual actions had any causal connection to the alleged delay or denial of medical care underlying the Complaint, or that the alleged deprivation of Plaintiff's rights was the result of any express policy, widespread practice, or decision by McKeithen in his official capacity. *See* Docs. 1, 41.   It is therefore clear that Sheriff McKeithen is entitled to summary judgment on all of Plaintiff's claims.

Defendant Dr. Lippmann's summary judgment motion asserts that he is entitled

to qualified immunity from suit because the allegations of the Complaint do not establish a constitutional violation and do not show that Dr. Lippmann violated clearly established law.  Dr. Lippmann contends that he never disregarded Plaintiff's request for medical care and treatment, and that the one time he believed Plaintiff was experiencing a medical emergency he sent him to the emergency room at Bay Medical Center Immediately.  Dr. Lippmann argues that there are "no cases which interpret Dr. Lippmann's actions as having violated Plaintiff's constitutional rights."  Doc. 36.

Dr. Lippmann's summary judgment evidence consists of Plaintiff's medical records during his confinement at Bay County Jail, a summary of the records prepared by a staff nurse, and Dr. Lippmann's affidavit.  Docs. 36, 37, 38.   The medical records summary reflects the following regarding the events leading to Plaintiff's transfer to the hospital emergency room.  *See* Doc. 37-5 at 4-5.  On April 14, 2010, Plaintiff was seen for complaints of upper respiratory symptoms and nausea.  He received a Phenergan injection and other treatment.  Later that evening he was reassessed for complaints of severe left leg pain.

The following morning, April 15, Plaintiff was seen by Dr. Lippmann who noted Plaintiff's left leg pain and other complaints.  Plaintiff was prescribed antibiotics and other medications.

On April 19, Plaintiff again complained of left leg pain.  The nurse on duty documented that his ankle was "very swollen" and Plaintiff was unable to move it.  He was placed on the list to be seen in the morning.

On April 20, Plaintiff submitted a sick call request complaining of worsening pain

and swelling in both legs that "started about two weeks ago."  He was seen by Dr.

Lippmann that morning, who noted "skin pain at site of redness," pitting edema at left

shin, negative Moses and Holman's sign, and "1/3 of the way up his shin from his foot is

erythematous."  Dr. Lippmann diagnosed cellulitis, and prescribed an antibiotic and

Percogesic.

On April 21, Plaintiff submitted another sick call request complaining of severe

pain.  Later that evening Plaintiff complained of left leg pain that was a "10" on a 1-10

scale.  The nurse documented non-pitting edema extending up to the knee and that

Plaintiff had difficulty ambulating and was "dragging" the leg.  Plaintiff was given an

antibiotic and Tylenol.  Plaintiff continued to complain of pain, and was re-housed in the

medical unit that night and scheduled to be seen by the doctor in the morning.

A few hours later, on April 22 at 1:30 a.m., the nurse again noted edema and

"faint" pedal pulse in the left foot and "strong and bounding" pulse in the right foot.

Plaintiff was given extra strength Tylenol and told to elevate his legs and feet.

At 10:00 a.m. on April 22, Dr. Lippmann examined Plaintiff and noted bilateral 2+

pitting edema, erythema greatly reduced on left leg but now erythema at right foot area,

and positive Moses sign (for DVT) on the left calf with new onset of edema.   Dr.

Lippmann noted "suspect DVT" and "send to Bay Medical Center Emergency Room."

Notes from the hospital reflect "left leg ischemia with motor function loss."  Plaintiff's left

leg was amputated on April 25.

Upon Plaintiff's return to the jail, he refused to be treated by Dr. Lippmann.  Dr.

Lippmann discontinued Plaintiff's medication on July 27, 2010, "due to treatment

refusal."  Plaintiff continued to refuse treatment until August 2, 2010, when he consented to be treated by Dr. Lippmann.  Dr. Lippmann's notes document that Plaintiff was serving a 20 year sentence for "LL" (lewd and lascivious).  Plaintiff's medications were reordered, but an August 8, 2010, Inmate Request by Plaintiff reflects that he had not yet received new prescriptions, an increase in pain medication, or a walker authorized by the doctor.  Doc. 37-5 at 205; 37-2 at 61.

Dr. Lippmann's affidavit states that he treated Plaintiff during his detention at the Bay County Jail, and the only time he felt Plaintiff was experiencing a medical emergency was when he saw Plaintiff on April 22 and suspected a DVT, at which point he was immediately transferred to the hospital.  He avers that when Plaintiff returned to the jail following his amputation, he discontinued Plaintiff's medication because it was medically necessary to evaluate Plaintiff and Plaintiff refused such evaluation.  Dr. Lippmann reinstated the medications after Plaintiff submitted to an examination.  Doc. 38-1.

On this record, the Court cannot conclude that Dr. Lippmann is entitled to qualified immunity from Plaintiff's claims.  Viewing the evidence in the light most favorable to Plaintiff, as the Court must, the record presents issues of fact as to whether any delay in transferring Plaintiff to a hospital for treatment, and any delay in receiving his medications after his reincarceration, amounts to deliberate indifference to his serious medical needs in violation of the constitution.[1]  While it is ultimately Plaintiff's burden to place verifying medical evidence in the record to establish the detrimental

---

[1]Defendant concedes for purposes of this motion that Plaintiff had a serious medical need.  Doc. 36.

effect of delay in medical treatment, *see Hill*, 40 F.3d at 1187, in view of Plaintiff's *pro se* status and apparent medical difficulties the Court concludes that he should be afforded additional time to seek such evidence.

Moreover, there is little question that clearly established law provides fair warning that a delay in necessary medical treatment, under circumstances amounting to deliberate indifference, violates the constitution.  A case with materially identical facts is not necessary for the law to be clearly established, "but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir.2010) (citation omitted).  The Eleventh Circuit has consistently held that "knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference."  *Adams v. Poag*, 61 F.3d 1537, 1543–44 (11th Cir.1995) (citing *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir.1988); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir.1985)). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir.1999).  Again, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there are facts that are inconsistent with qualified immunity being granted at this stage.

## **RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant

McKeithen's motion for summary judgment, Doc. 34, be **GRANTED**, and that

Defendant Lippmann's motion for summary judgment, Doc. 36, be **GRANTED in part** to

the extent that the Complaint states negligence claims under state law, and in all other

respects be **DENIED**.  The undersigned further recommends that the matter be

recommitted to the undersigned for entry of an order governing an additional limited

period of discovery and for reconsideration of Plaintiff's motions seeking appointment of

counsel.

   **IN CHAMBERS** in Gainesville, Florida, this 18th day of February 2015.


   *s/Gary R. Jones*
   GARY R. JONES
   United States Magistrate Judge


## NOTICE TO THE PARTIES

   **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**